UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ANTHONY JEROME HARMON, | ) | Civil Action No.: 4:12-cv-3417-RMG-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| BRUCE M. BRYANT, JAMES F. | ) | |
| ARWOOD, RICHARD L. MARTIN, JR., | ) | |
| DR. JAMES JEWELL, TAMMY DOVER, | ) | |
| RN, MUNICIPALITY OF YORK | ) | |
| COUNTY SC; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se, was at all times relevant to this action housed as a pretrial detainee at the York County Detention Center (YCDC).  He brings this action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to serious medical needs.  Presently before the Court are Defendant Dr. James Jewell's  Motion for Summary Judgment (Document # 68) and the remaining Defendants' Motion for Summary Judgment (Document # 85).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.  Because this motion is potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II.    FACTS

Plaintiff was initially booked into the York County Detention Center (YCDC) on December 10, 2011. Arwood Aff. ¶ 3. On July 26, 2012 at or about 8:40 p.m., Plaintiff and Inmate Dante McGill were engaged in a physical altercation. Id. ¶ 4.  At that time, a YCDC detention officer observed that Plaintiff had pinned McGill against a wall striking McGill with his fist about his face

and head. Id. ¶ 5. Despite the officer repeatedly commanding Plaintiff to immediately cease assaulting McGill, Harmon continued to strike McGill numerous times. Id. Plaintiff was immediately and forcibly removed, handcuffed, and placed in the Special Management Unit. Id. ¶ 6. McGill was taken to the booking area for treatment of his wounds. Id. Plaintiff was deemed the aggressor. Id.

On July 27, 2012, Plaintiff was seen by the nursing staff at YCDC and an examination of his hand indicated that it was visibly swollen and tender in the small finger of the right hand. Pl. Medical Records. He was placed on doctor call and treated with an ice pack and ibuprofen. Id.

On August 2, 2012, Plaintiff was seen by James Jewell, M.D., the YCDC facility physician who conducted a medical evaluation and referred him for an X-ray of his hand the same day. Dover Aff. ¶ 8. The X-ray revealed that Plaintiff had sustained an acute fracture of the mid-shaft fourth metacarpal in his right hand. Id. ¶ 9. The YCDC received the results of Plaintiff's x-ray from Dr. Jewell's office on August 10, 2012. Pl. Medical Records. On August 20, 2012, he was placed on sick call to see if he would like an orthopedic follow up at his expense. Id. On August 21, 2012, Plaintiff requested a follow up appointment with an orthopedist and acknowledged that he would be responsible for the payment. Id. On August 22, 2012, Defendant Tammy Dover, RN, the Medical Services Coordinator at YCDC advised Plaintiff via letter that Carolina Orthopedics would require an upfront payment of one hundred dollars. Id. She directed Plaintiff to have family members arrange for payment with Carolina Orthopedics and she would then contact them to schedule an appointment. Id. The medical records reveal no further discussion regarding payment to Carolina Orthopedics or any follow up appointment even though Plaintiff was seen by the medical staff for other reasons at least seven times prior to his release. Id.

On October 13, 2012, Plaintiff submitted an Inmate Request Form claiming that he had filed

a grievance on August 12, 2012[1], regarding the medical treatment for his hand.  Dover responded on October 18, 2012, "it was not ignored by the Sheriff.  You were evaluated by the facility physician and transported to the hospital for an x-ray.  Because it was a self-inflicted injury due to an altercation, you are responsible for payment.  I have also noted that you have only signed up for sick call once regarding any pain or any other issues related to your hand in July.  That sick call took place on August 10, 2012."  Inmate Request Form.  Plaintiff then wrote a letter to Defendant Chief James Arwood regarding his medical treatment.  Pl. Letter to Arwood.  Chief Arwood responded to the letter and indicated that, although Plaintiff was issued a grievance form on August 4, 2012 to complete, he never submitted the form.  Arwood Letter to Pl.

Plaintiff was released on January 16, 2013 and has not returned to YCDC since his release.  Arwood Aff. ¶ 3.

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.  Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party

---

[1] Chief Arwood avers that there is no record of a grievance filed by Plaintiff on August 12, 2012, or any other time regarding his medical treatment.  Arwood Aff. ¶ 18.

must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.     DISCUSSION

### A.     Defendant Jewell's Motion for Summary Judgment

Defendant Jewell argues that he was not deliberately indifferent to Plaintiff's serious medical needs. The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment-deliberate indifference to serious medical needs. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir.1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988) (citing Estelle v. Gamble, 429

-4-

U.S. 97 (1976)). "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir.1990) (citing Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988)). In order to state a claim, "[a] plaintiff must satisfy two elements ...: he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." Sires v. Berman, 834 F.2d 9, 12 (1st Cir.1987). In the case of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." Id. (quoting Gregg v. Georgia, 428 U.S. 153, 169–73, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.... We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Id. at 103–105 (footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> ... a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Id. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990).  There, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), ... nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986).

Further, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200–03, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir.1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108–109 (3rd Cir.1990); Smart v. Villar, 547 F.2d 114 (10th Cir.1976) (affirming summary dismissal).

 "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.1988). Prison officials implement the type and amount of medical treatment at their discretion. See Allah v. Hayman, 442 F. App'x 632, 635 (3d Cir.2011) (holding that deliberate indifference standard "requires much more" than taking issue with the "amount and

kind of medical care" an inmate received); <u>Johnson v. Doughty</u>, 433 F.3d 1001 (7th Cir.2006) (finding that a prison doctor who prescribed non-surgical means of treating an inmate's hernia was not deliberately indifferent to the inmate's medical needs where the doctor formed a professional opinion, other doctors agreed, and the inmate continued to have associated abdominal pain); <u>Faison v. Rosado</u>, 129 F. App'x 490, 492 (11th Cir.2005) (noting that although a prisoner "might not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim").

The evidence in the record reveals that Plaintiff was first seen by Dr. Jewell on August 2, 2012, and Dr. Jewell referred him for an x-ray on the same day. Dr. Jewell forwarded the x-ray report to the YCDC on August 10, 2012. From there, the record reveals that the medical coordinator for the facility, Teresa Dover, advised Plaintiff of the results of the x-ray and informed him that she would arrange for an orthopedic consult if he desired once his family could arrange for payment of the consult since the injury was self-inflicted. Dr. Jewell avers that he does not have the authority to refer inmates to outside medical providers for medical services and must confer with the medical coordinator on such issues. Jewell Affidavit. There is no evidence in the record that Dr. Jewell was involved in this process once he provided the x-ray report to the medical coordinator at the YCDC. Furthermore, Plaintiff has failed to present evidence that, had he met with an orthopedist, the treatment he received would have been different. The medical staff at YCDC did not fail to treat Plaintiff's injury. Plaintiff just disagrees with the type of treatment he received. However, as stated above, a disagreement in treatment does not give rise to constitutional violation.

To the extent Plaintiff argues that the delay in receiving the x-ray or in notifying him of the results of the x-ray arises to the level of a constitutional violation, that claim fails as well. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place

verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188 (11th Cir.1994). A medical need is serious if a delay in treatment causes the inmate "to suffer a life-long handicap or permanent loss." Coppage v. Mann, 906 F.Supp. 1025, 1037 (E.D.Va. 1995). See also Webb v. Hamidulla, 281 Fed.Appx. 159 (4th Cir.2008) (unpublished) (holding an Eighth Amendment violation occurs only if the delay results in some substantial harm to the inmate). The plaintiff has failed to allege how any such delay in his treatment resulted in a detrimental effect or has caused him a life-long handicap or permanent loss.  Thus, for these reasons, summary judgment is appropriate as to the claims against Dr. Jewell.

**B.    Remaining Defendants' Motion for Summary Judgment**

The remaining Defendants have pleaded the affirmative defense of failure to comply with the PLRA's exhaustion requirement and have moved for summary judgment on that basis as well as on the merits of the allegations.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner[2] exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C.1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id.

---

[2] A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." § 1997e(h). Thus, exhaustion of administrative remedies is also required of pretrial detainees such as Plaintiff here.

§ 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir.2001) (exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3 d 718 (7th Cir.2001) (exhaustion required even though Plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying Booth v. Churner to affirm district court's denial of relief to Plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

The YCDC provides all inmates with an administrative grievance process.  An informal resolution between the inmate and staff member is strongly encouraged.  However, if the inmate cannot find an informal solution and wishes to utilize the grievance procedure, the complaint must be filed using the Inmate Grievance Form, which must be signed, dated, and filed within 72 hours from the date of the incident giving rise to the grievance.  The inmate may provide the Grievance Form to any detention officer, who will deliver it to the Assistant Administrator/Security Commander and/or Watch Commander.  The Assistant Administrator/Security Commander generally has seven days to investigate and respond to the grievance.  If the inmate is not satisfied with the initial response, the inmate must appeal the decision by writing a letter to the Chief Administrator within seven days of receipt of the decision.  Arwood Aff. ¶¶ 9-17.

It is undisputed that Plaintiff failed to comply with YCDC's grievance policy.  Therefore,

summary judgment is appropriate and it is unnecessary to address the merits of Plaintiff's claims against the remaining Defendants.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Dr. Jewell's Motion for Summary Judgment (Document # 68) be granted, the remaining Defendants' Motion for Summary Judgment (Document # 85) be granted, and this case be dismissed in its entirety.


   s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

November 26, 2013
Florence, South Carolina

**The parties are directed to the important information on the following page.**

-10-